IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Criminal No. 11-206 |
| ) | Criminal No. 12-126 |
| GREGORY IZEAR CORBIN, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

AND NOW, this 18th day of March, 2025, upon consideration of Defendant Gregory Izear Corbin's *pro se* Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (Doc. No. 186 at Crim. No. 11-206; Doc. No. 90 at Crim. No. 12-126), filed on June 7, 2023, and his Supplemental Motion to Reduce Sentence (Doc. No. 191 at Crim. No. 11-206; Doc. No. 95 at Crim. No. 12-126), filed by counsel on August 4, 2023 and August 7, 2023, respectively, and in further consideration of the Government's response thereto (Doc. No. 193 at Crim. No. 11-206; Doc. No. 96 at Crim. No. 12-126), filed on August 28, 2023, Defendant's reply (Doc. No. 197 at Crim. No. 11-206; Doc. No. 100 at Crim. No. 12-126), filed on September 21, 2023, the Government's Sur-Replies (Doc. No. 198, 199 at Crim. No. 11-206; Doc. No. 101, 102 at Crim. No. 12-126), filed on September 22, 2023 and November 9, 2023, the Government's Response to the Court's Order for Supplemental Briefing and attached exhibits (Doc. No. 202 at Crim. No. 11-206), filed on October 29, 2024, the Defendant's Supplement thereto and related exhibits (Doc. Nos. 205, 206 at Crim. No. 11-206; Doc Nos. 107, 108 at Crim. No. 12-126), filed on January 6, 2025, and the Government's Response thereto and attached exhibit (Doc. No. 207 at Crim. No. 11-206), filed on February 6, 2025,

1

IT IS HEREBY ORDERED that, for the reasons set forth herein, the Defendant's Motion and Supplemental Motion are DENIED.

I.     **Background**

Defendant is a party in two separate criminal cases, Crim. Nos. 11-206 and 12-126. At Criminal number 11-206, Defendant pled guilty to one count of possessing a firearm as a convicted felon, in violation of 21 U.S.C. § 922(g)(1). Subsequently, on August 22, 2012, Defendant also pled guilty to a violation of Section 922(g)(1) for possessing a firearm as a convicted felon at Criminal No. 12-126. Defendant's convictions were grouped for sentencing, and the advisory United States Sentencing Guidelines recommended that the Court impose a term of imprisonment ranging from 130-162 months at the two counts. However, on January 8, 2013, the Court varied from this recommended range and imposed a 120-month term of imprisonment at each of Criminal Nos. 11-206 and 12-126, pursuant to the plea agreement between the parties, to be served concurrently. (Crim. No. 11-206; Crim. No. 12-126). Subsequently, on April 9, 2013, Defendant pled guilty to Pennsylvania state charges for robbery and aggravated assault at Case No. CP-02-CR-9804-2011. He was sentenced by the Commonwealth to 7 and a half to 15 years' imprisonment, to be served consecutive to his federal sentence. Defendant immediately began serving his state sentence and was paroled on October 15, 2020. On that same date, he began serving his federal sentence, and his projected release date is February 4, 2029. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited March 17, 2025).

On April 29, 2022, the Court denied Defendant's first motion for Compassionate Release. (Doc. No. 182 at Crim. No. 11-206; Doc. No. 86 at Crim No. 12-126). There, Defendant argued that his immediate release was warranted due to Covid-19, his minor child being removed from

his mother's custody, and his rehabilitative measures. The Court disagreed as to all bases and denied Defendant's motion.

Defendant again seeks "compassionate release," pursuant to 18 U.S.C. § 3582(c)(1)(A), again based on death or incapacitation of the caregiver of his minor child, I.C., under U.S.S.G. §1B1.13 app. n.1(C)(i). For the reasons stated below, the Court disagrees and will deny Defendant's Motion and Supplemental Motion.

## II.     Discussion

District courts have limited authority to modify a sentence in a criminal case that has become final. *See Dillon v. United States*, 560 U.S. 817, 819 (2010); *United States v. Ponton*, 407 Fed. Appx. 622, 624 (3d Cir. 2011). They do have authority, however, to reduce a final sentence under 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), as amended by the First Step Act, Pub. L. 115-391, 132 Stat. 5194, permits an incarcerated person to petition the court for compassionate release. Specifically, the statute provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). Defendant submitted such a request to the warden at FCI-Hazelton on January 18, 2023. (Doc. No. 191-1 at Crim No. 11-206; Doc. No. 95-1 at Crim No. 12-126). As such, the warden received Defendant's request more than 30 days ago and the Court can consider the pending motion for compassionate release. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020). While the Government initially disputed that Defendant met the procedural requirements of Section 3582(c)(1)(A), the Government later conceded the point in subsequent briefing. (Doc. No. 198 at 2 at Crim No. 11-206; Doc. No. 101 at 2 (stating "the government agrees that [Defendant] has exhausted the claims which he raises in [the January 18, 2023 request for compassionate release]"). Accordingly, the parties concur that Defendant has met the procedural requirements of Section 3582(c)(1)(A).

The Court must next decide whether Defendant has established an extraordinary and compelling reason or reasons warranting a reduction in his sentence and whether a reduction is consistent with applicable Sentencing Commission policy statements. Defendant "bears the burden of proof by a preponderance of the evidence" to establish that he is entitled to relief. *United States v. Grasha*, 489 F. Supp. 3d 403, 406 (W.D. Pa. 2020). The extraordinary and compelling reasons requirement demands, at "minimum," that the "justification for release" is "both unusual (*i.e.*, unique to the inmate, and beyond the ordinary hardship of prison) and significant (*i.e.*, serious enough to make release appropriate)." *United States v. Arthurs*, Nos. 18-188 & 20-73, 2022 WL 796752, at *4 (W.D. Pa. Mar. 16, 2022) (citation omitted). Congress has not defined the term "extraordinary and compelling reasons," and instead delegated the authority to define this term to the Sentencing Commission. In this regard, Section 1B1.13 of the Sentencing Guidelines explains that a court may order a sentence reduction where a court determines:

4

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
> (2) the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(a)(1)-(3).

Section 1B1.13(b) lists three specific qualifying circumstances where "extraordinary and compelling reasons" exist: (1) a defendant's medical condition, (2) age, or (3) family circumstances. § 1B1.13(b)(1)-(3). As to family circumstances, the Note to Section 1B1.13(b)(3) states the following, in pertinent part:

> (3) FAMILY CIRCUMSTANCES OF THE DEFENDANT.—
> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition. . . .

§ 1B1.13(b)(3). Additionally, Note 1(D) provides a catchall provision authorizing compassionate release for any "extraordinary and compelling reason other than, or in combination with" the enumerated ground for release. U.S.S.G. § 1B1.13 app. n.1(D).

As noted, Defendant seeks compassionate release because his minor child is in immediate need of care because he was removed from his mother's custody, placed in foster care, and moved to his fourth foster home in four years. According to Defendant, the minor child's mother has made only moderate progress towards alleviating the circumstances which necessitated removal in the first instance, and the child remains in foster care where he has endured physical, sexual, and emotional abuse. As shown above, the Sentencing Commission's statement on family circumstances of the defendant specifically addresses such situations. However, while Defendant provides evidence that his child has been taken from his mother's custody, placed in foster care, and that there is currently no plan to return the minor child to the mother's custody, he does not satisfy his burden to demonstrate that this situation calls for his immediate release.

5

First, Defendant fails to show that he is the only family member capable of caring for his minor child. While this is not an explicit requirement of the policy, some courts have held that a defendant may only be granted compassionate release based upon his family circumstances if he shows that he is the only person available to act as caregiver to his minor children. *See, e.g.*, *United States v. Cruz-rivera*, No. CR 11-43, 2020 WL 5993352, at *5 (E.D. Pa. Oct. 9, 2020) (stating defendant did not carry his burden to show that he would be the only caregiver to his minor child if his wife were incapacitated due to medical illnesses); *United States v. Crandle*, No. 10-35-SDD-RLB, 2020 WL 2188865, at *4 (M.D. La. May 6, 2020) (finding insufficient evidence demonstrating that an inmate was the only available caregiver where the inmate did not supply medical records, letters, or affidavits supporting his claim).

Here, Defendant asserts that his child is in his fourth foster home in four years and has provided court records from August 23, 2023 and October 9, 2024 showing that Allegheny County Family Court evaluated his minor child's current circumstances and found continuing foster placement was necessary and appropriate. (Doc. Nos. 197-1, 206 at Crim No. 11-206; Doc. Nos. 100-1, 108 at Crim. No. 12-126). Defendant also provides a letter from Loretta Brown, a father engagement specialist with the Allegheny County Department of Human Services, dated February 24, 2022 and stating that Defendant's minor child was unable to be placed in his grandfather's (Defendant's father's) home due to the grandfather's wife's ChildLine charge and that his grandmother (Defendant's mother) reported she would need to move before caretaking for a child. (Doc. Nos. 186-5, 191-5 at Crim No. 11-206; Doc. Nos. 90-5, 95-5 at Crim. No. 12-126). The Government counters that Defendant has a large support network, including a step-father, multiple half siblings, an adult daughter, and a step-daughter. (Doc. No. 193 at 6 at Crim No. 11-206; Doc. No. 96 at 6 at Crim No. 12-126). The Court further

ordered the parties to provide supplemental briefing on Defendant's family members' circumstances and their willingness to serve as caregivers, but neither party provided the Court with updated information as to these family members' situations and availability to care for I.C. (Doc. No. 201 at Crim. No. 11-206; Doc. No. 104 at Crim. No. 12-126). Instead, Defendant contends that he remains the only familial caregiver available to care for his minor child. (Doc. No. 205 at 4).

Moreover, there is no evidence that Defendant would be able to care for his minor child if he were released from prison. Defendant has no history as a caretaker to his minor child and the record supports the conclusion that he has had only minimal contact with this child. The Government points out that Defendant did not live with his minor child's mother prior to the child's birth, instead Defendant lived with his mother. (Doc. No. 193 at 4 at Crim No. 11-206; Doc. No. 96 at 4 at Crim No. 12-126 (citing PSR ¶ 51)). There is no evidence that Defendant had any contact with his minor child before his incarceration. Defendant provides evidence that he has had some more current contact with I.C. through a letter from his child's prior foster mother, indicating Defendant and his child had two phone conversations, and he contends that he works in prison to have money available to make phone calls to I.C. at no cost to his foster mother. (Doc. Nos. 186-3, 191-1 at 7, 192 at Crim No. 11-206; Doc. No. 95-1 at 7 at Crim. No. 12-126; Doc. No. 205 at 3).[1] While there is evidence that visitation was restricted due to an

---

[1] Defendant also attached an exhibit showing that his girlfriend was permitted to transport his minor child to FCI-Hazelton, but there is no indication that Defendant's child has ever visited him. (Doc. Nos. 186-8 at 2, 191-1 at 8 at Crim. No. 11-206; Doc. No. 95-1 at 8 at Crim. No. 12-126). Defendant makes no mention of his girlfriend in his most recent filings. (Doc. No. 205 at Crim. No. 11-206; Doc. No. 107 at Crim. No. 12-126).

increase in Covid-19 cases, there is no evidence that Defendant and the child visited after a decrease in Covid cases and restrictions. (*Id.*).

Additionally, Defendant provides only superficial evidence that he is the father of his minor child. Defendant submits Permanency Review Orders from Allegheny County Family Court, showing that he was listed as the biological father in his minor child's case. (Doc. Nos. 186-6, 191-2, 206 at Crim No. 11-206; Doc. Nos. 90-6, 95-2, 108 at Crim No. 12-126). However, the most recent records from Allegheny County Family Court pertaining to I.C.'s placement show that the Office of Children, Youth, and Families was ordered to check the paternity tracking for I.C. (Doc. No. 206 at 11-206; Doc. No. 108 at Crim. No. 12-126). Also in evidence are findings from the Family Court of Allegheny County in a Permanency Review Order stating that Defendant "has held himself out to be the father[,]" but that his acknowledgment of paternity has not posted to the state system despite Defendant having received it and indicating, through his attorney, that he signed it. (Doc. No. 191-2 at 2 at Crim. No. 11-206; Doc. No. 95-1 at 2 at Crim. No. 12-126). This is further reflected in a letter to the Allegheny Family Court, regarding Defendant's minor child, which states that Defendant is "the alleged father of [the minor child and that] [a]n Acknowledgment of Paternity was not found." (Doc. Nos. 186-2, 191-1 at 6 at Crim. No. 11-206; Doc. Nos. 90-2, 95-1 at Crim. No. 12-126).[2]

The most recent records from Allegheny County Family Court indicate that I.C. is safe in his current placement setting and that his current caregiver has no known criminal cases. (Doc.

---

[2] Further complicating the issue of paternity is communication to Defendant stating that "[p]aternity was already established in this case, and we cannot revisit it as [Defendant has] been found to be the legal father[,]" but it is not clear who addressed this communication other than the name "Philly Colman" with no title or explanation as to this person's relation to Defendant in Defendant's Motion or his Supplemental Motion. (Doc. No. 186-4 at Crim. No. 11-206; Doc. No. 90-4 at Crim. No. 12-126).

Nos. 206 at 1, 207-1 at Crim. No. 11-206; Doc. No. 108 at 1 at Crim. No. 12-126). Further, as of October 9, 2024, I.C.'s mother indicated that she is open to visitation with him. (Doc. No. 206 at 2 at Crim. No. 11-206; Doc. No. 108 at 2 at Crim. No. 12-126). Moreover, while there are no current plans to return I.C. to his mother's care, there is no indication that I.C.'s mother has terminated parental rights or that there is any concrete plan for the juvenile court to award Defendant sole physical custody if he is released. (Doc. No. 205 at 2 at Crim. No. 11-206; Doc. No. 107 at Crim. No. 12-126). Absent this plan, the Court is not able to grant Plaintiff's motion for compassionate release. In sum, there is, at most, only conflicting evidence and no concrete proof that Defendant would be able to obtain custody of his minor child if he were released from prison.

Defendant's inability to take part in his minor child's court proceedings also does not justify early release. Defendant argues that he has not been able to take part in his minor child's proceedings regarding foster placement and permanency review. He attaches an e-mail from his attorney in the family court proceedings, Maegan M. Susa, stating that she has "never had anyone answer the phone or return [her] calls at the prison about how to make [Defendant] available for a court hearing." (Doc. Nos. 186-8, 191-3 at Crim No. 11-206; Doc. Nos. 90-8, 95-3 at Crim. No. 12-126). Defendant contends that he is unable to obtain a determination of his custodial rights due to his inability to participate in these proceedings. (Doc. No. 191 at 12-13 at Crim. No. 11-206; Doc. No. 95 at 12-13 at Crim. No. 12-126). The Government points out that Defendant attended the November 8, 2023 family court proceeding and attaches an e-mail showing that Defendant participated in a family court audio hearing at 10:00 a.m. on November 9, 2023. (Doc. No. 199-1 at No. 11-206; Doc. No. 102-1 at Crim. No. 12-126). The Government also contacted a correctional counselor at FCI-Hazelton to facilitate Defendant

being able to remotely attend his child's next hearing. (Doc. No. 194-3 at Crim. No. 11-206; Doc. No. 97-3 at Crim. No. 12-126). Moreover, records from I.C.'s Permanency Review Hearing on October 9, 2024 show that Defendant attended via video conference, although his Counsel states that FCI-Hazelton did not make him available to attend this hearing. (Doc. Nos. 205 at 1, 206 at 1 at Crim. No. 11-206; Doc. Nos. 107 at 1, 108 at 1 at Crim. No. 12-126). Accordingly, Defendant's argument on this point is neither extraordinary nor compelling.

Lastly, Defendant argues that the rehabilitative measures he has taken while incarcerated and the amount of time he has spent in state custody justify compassionate release. The Court first notes that rehabilitation could only justify a reduction of sentence in combination with other reasons. *See United States v. Reed*, Crim. No. 06-193, 2021 WL 914203, at *6 (W.D. Pa. Mar. 10, 2021) (citing 28 U.S.C. § 994(t)). As noted, the Court has not found the other bases cited by Defendant to be extraordinary or compelling reasons for compassionate release. In any event, while Defendant has admirably completed many courses while at FCI-Hazelton, has created his own collection of leather goods with plans to sell handmade items, has received positive marks on his recent work evaluation, and has arranged to take a one-week asbestos course after release and will be offered work upon completion of that course, the Court finds that these measures do not justify release, as his behavior is not outside the ordinary experience of an incarcerated criminal defendant. (Doc. Nos. 186-1, 191-1 at 5, 197-2, 205 at 4, 205-2, 205-3 at Crim No. 11-206; Doc. Nos. 90-1, 95-1 at 5, 100-2, 107 at 4, 107-2, 107-3 at Crim No. 12-126).

Moreover, even if the Court were to find extraordinary and compelling reasons for compassionate release, Defendant's misconducts while in prison weigh against the 18 U.S.C. § Section 3553(a) factors. *See United States v. Jasek*, No. 2:19-cv-8, 2023 WL 348961, at *1 (W.D. Pa. Jan. 20, 2023) (stating the defendant's "several acts of prison misconduct since

beginning his sentence" were part of the Section 3553 factors that "overwhelmingly weigh against reducing [defendant's] sentence"). Indeed, the Government points out that Defendant had a number of misconducts, including fighting and possession of an unauthorized item while in prison. (Doc. Nos. 194-2, 198-3 at Crim. No. 11-206; Doc. Nos. 97-3, 101-3 at Crim. No. 12-126).

### III.   Conclusion

Accordingly, the Court finds a reduced sentence is inappropriate under 18 U.S.C. § 3582(c)(1)(A). Defendant's Motion and Supplemental Motion are therefore denied.

s/Marilyn J. Horan<br>
United States District Judge

Ecf:    Counsel of record